## Case No. 3,463.

### CULBERTSON v. STILLINGER.

. [Taney, 75.][1]

Circuit Court, D. Maryland. April Term, 1846.

BOND BY EXECUTOR TO SURETY—ACTION—CONDITIONS—SET-OFF — SUBSEQUENT AGREEMENT BY SURETY—ENFORCEMENT IN EQUITY.

1. An action at common law, upon a bond, must be determined according to the rules at common law, and without reference to the relief which the defendant might obtain in a court of equity.

2. A bond given by an executor for the payment, to his surety, of one-half of his commissions, from time to time, as they may be allowed, in consideration of his consenting to become such surety, is a valid instrument.

3. The law will not annex to such a bond a condition precedent, that the surety shall continue solvent till the estate is finally settled, before he will be entitled to any of such commissions.

4. The premium paid by the executor to the new surety, if additional security be required by the orphans' court, is not a legal set-off to an action on such bond.

5. But counsel fees paid by the executor, in establishing the amount of his commissions, will be a proper credit on the portion of commissions to be paid to the surety, in proportion to the share of said commissions which the surety is to receive.

6. An agreement by the surety, not under seal (executed after the bond), not to claim any part of the commissions which may accrue during the lifetime of the testator's widow, will not

---

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

be considered a condition annexed to the bond, nor a release or defeasance thereof.

7. Such agreement would be enforced in a court of equity.

8. Upon proceedings in equity the question would be open, as to what deduction ought to be made, for a premium paid by the executor, to procure a new surety required to be given by him in consequence of the first surety becoming insolvent.

9. And upon such proceedings in equity, the question also would be open, as to whether the bond given to the first surety would create a liability to pay any part of the commissions accrued after the said surety had become insolvent.

This was an action of debt, brought the 9th December, 1844, upon a bond executed by the defendant Thomas Chambers, whose assignee in bankruptcy [Samuel D. Culbertson] was the plaintiff in the suit. The condition of the bond was as follows: "Whereas, by the last will and testament of Michael Riddlemoser, late of Baltimore county, deceased, the above-bound Michael Stillinger was appointed one of the executors of said last will and testament, and, by the renunciation of the other persons named as co-executors in said last will and testament, since its execution and admission to probate in the orphans' court of Baltimore county, has become sole executor: and whereas, the said above-bound Michael Stillinger has found much difficulty in procuring such security for the faithful discharge of his duties as executor as aforesaid, as would be received as sufficient by said orphans' court, and has applied to the said Thomas Chambers to become one of his said securities, and in consideration of the risk, and trouble and responsibility, that would be incurred by the said Thomas Chambers, in becoming one of his said securities as executor as aforesaid, has agreed to account for and pay over to the said Thomas Chambers, from time to time, as the same may be received and allowed by the said orphans' court, one-half of the sum or amount of money. that may be allowed to the said Michael Stillinger, for his commissions, as executor as aforesaid, by the said orphans' court, for the sole use and benefit of the said Thomas Chambers: and whereas, the said Thomas Chambers has agreed to become one of the securities of the said Michael Stillinger, as executor as aforesaid: Now the condition of the above obligation is such, that if the above-bound Michael Stillinger shall well and truly account for, and pay over to, the said Thomas Chambers, his executors, administrators or assigns, for his and their sole use and benefit, from time to time, as the same may be received and allowed by the said orphans' court, one-half of the sum or amount of money, that may be allowed to the said Michael Stillinger, for his commissions, as executor as aforesaid, by the said orphans' court; and shall well and faithfully, in all respects, discharge his duties as executor as

aforesaid, then the aforegoing obligation to be void and of none effect, otherwise to be and remain in full force, virtue and effect in law. Michael Stillinger. (Seal.) Signed, sealed and delivered in presence of James Kernan."

On the day of the date of this bond, the said Chambers and Stillinger signed the following agreement: "It is agreed and understood between the subscribing parties, that the said Chambers releases all his claim and right to certain commissions on the rents and proceed of the estate of Michael Riddlemoser, vested in him by agreement, executed this day, between the said parties, during the lifetime of the widow of said Michael Riddlemoser. Witness our hands, this 15th day of January, 1833. Thomas Chambers. Michael Stillinger. James Kernan."

The defences taken by the defendant were —(1) The above agreement was a defeasance of the bond to the extent of the commissions allowed anterior to the death of the widow of said Riddlemoser. (2) That additional security upon the bond of Stillinger was ordered by the orphans' court, in consequence of the reputed insolvency of Chambers; that Chambers was called upon to furnish such additional security, but failed to do so, and the same was procured by Stillinger himself, prior to the death of Mrs. Riddlemoser (for which he had to pay $2.00), and therefore, the plaintiff was not entitled to recover for any of the commissions allowed after such new security was given. (3) That the said Chambers was insolvent at the time of the execution of the bond sued on. (4) That said Chambers became a bankrupt before the settlement of the estate. and that he ceased to be a security on the bond of Stillinger, after such bankruptcy, and his assignee was not entitled to recover any part of the commissions accrued after such bankruptcy. (5) That the defendant was entitled to a credit of $700, being one-half of fees paid to counsel, employed by him to establish the amount of commissions received by him.

William Schley, for plaintiff.

G. L. Dulaney and Wm. Meade Addison, for defendant.

TANEY, Circuit Justice. This being an action at law upon a bond, the questions which arise upon the case stated, must be decided according to the rules at common law, and without reference to the relief which the defendant might obtain in a court of equity.

1. We think the bond is a valid contract, and not contrary to the policy of the law; undoubtedly, any agreement to pay money, in order to obtain an appointment to a public office, would be void; but if this principle extends to the appointment of an administrator by the orphans' court, yet it will not embrace the case before us; for the money was not to be paid to assist the party in

procuring the appointment. He had already been selected and appointed executor by the testator, who had, unquestionably, a right to make the appointment; and the money was to be paid for the purpose of enabling him to execute the duties of his appointment, and to carry into effect the wishes and intentions of the testator.

2. Neither is the continued availab'lity of the security given, until the estate was finally settled, a condition precedent, to be performed by Chambers, before he became entitled to any part of the commissions; on the contrary, his share was to be paid to him, from time to time, as the commissions accrued and were allowed by the orphans' court, and it was not to wait for the final settlement, before it became due and payable.

3. The premium paid to the new surety, when additional security was required by the court, is not a legal set-off in this action. Chambers did not contract to furnish it, if called for; nor make any contract, express or implied, to reimburse the amount paid by the defendant. And, sitting in a court of law, we cannot apportion the premium contracted to be paid to Chambers, upon the ground that there has been an accidental failure of a part of the consideration for which this premium was to be paid.

4. The executor had, undoubtedly, a right to employ counsel, and there is no evidence to show that the fee paid was unreasonable or unusually high. It is, therefore, a legal credit against the present claim, in proportion to the share of the commissions to which Chambers is entitled.

5. The agreement between Chambers and Stillinger, as to the commissions in the lifetime of the testator's widow, is not a condition annexed to the bond. It is not endorsed upon the bond delivered to Chambers, but is a separate instrument, and upon the face of it, was executed after the bond, although upon the same day; for it refers to certain rights, which Chambers had acquired upon the bond, and agrees to release them. And as this instrument is not under seal, it cannot operate as a release or defeasance.

Undoubtedly, it would be enforced in a court of equity; and, upon a proceeding there, the question would also be open as to the deduction proper to be made on account of the new security required by the court; and whether, upon principles of equity, Chambers was entitled to any share of the commissions which accrued after his name had ceased to be available as a surety, and his credit become insufficient to protect the executor in the possession of his letters testamentary.

But upon the case stated we think the defendant has no defence at law, and therefore direct the judgment to be entered on the verdict, with interest until paid, deducting first the one-half of the counsel fee. Verdict and judgment for the plaintiff.